930 F.2d 913
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Charles Steven MELKONIAN, Plaintiff-Appellant,
v.
THE CITY OF HAVELOCK, a North Carolina Municipal
Corporation, Thomas F. Mylett, individually, and as Mayor of
the City of Havelock, Jimmy Sanders, individually, and as a
member of the Board of Commissioners of the City of
Havelock, Lee K. Allen, individually, and as a member of the
Board of Commissioners of the City of Havelock, Richard
Rice, individually, and as a member of the Board of
Commissioners of the City of Havelock, Eva Sermons,
individually, and as a member of the Board of Commissioners
of the City of Havelock, Henry Witten, individually, and as
a member of the Board of Commissioners of the City of
Havelock, H. Ralph Kennedy, individually, and as City
Manager of the City of Havelock, Michael J. Campbell,
individually, and as Public Safety Director of the City of
Havelock, Joseph Brennan, individually, and as Chairman of
the Board of Adjustment of the City of Havelock, George
Blakely, individually, and as a member of the Board of
Adjustment of the City of Havelock, Curtis Bare,
individually, and as a member of the Board of Adjustment of
the City of Havelock, Sue Wolbert, individually, and as a
member of the Board of Adjustment of the City of Havelock,
Warren S. Nye, individually, and as a member of the Board of
Adjustment of the City of Havelock, Jack O'Rouke,
individually, and as a member of the Board of Adjustment of
the City of Havelock, O.K. Gainey, individually, and as a
member of the Board of Adjustment of the City of Havelock,
George Gillenwater, individually, and as a member of the
Board of Adjustment of the City of Havelock, Harold Mills,
individually, and as a member of the Board of Adjustment of
the City of Havelock, Charles Satanski, individually, and as
Director of Inspections for the City of Havelock, and
Executive Secretary for both the Planning Board and the
Board of Adjustment of the City of Havelock, Defendants-Appellees.
 No. 90-2186.
 United States Court of Appeals, Fourth Circuit.
 Argued March 4, 1991.
Decided April 18, 1991.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at New Bern. Terrence W. Boyle, District Judge. (CA-88-130-4-CIV)
 Elizabeth Williams, Ward, Ward, Willey & Ward, New Bern, N.C. (Argued), for appellant; A.D. Ward, Ward, Ward, Willey & Ward, New Bern, N.C., on brief.
 James Redfern Morgan, Jr., Womble, Carlyle, Sandridge & Rice, Winston-Salem, N.C., for appellee; William Joseph Austin, Jr., Ward & Smith, P.A., New Bern, N.C., on brief.
 E.D.N.C.
 AFFIRMED.
 Before SPROUSE and WILKINSON, Circuit Judges, and JOHN A. MACKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Charles Melkonian applied for a Special Exception Use (SEU) permit under the city zoning procedures of the City of Havelock, North Carolina, to allow him to operate a nightclub there. He was denied the permit, but, after a great deal of litigation, was awarded an on- and off-premises beer license by the North Carolina Alcoholic Beverage Control Commission. Thereafter, on July 3, 1986, he opened his nightclub. A year later, however, he closed his business contending that the City and its various officials made it impossible for him to operate. He cited harassment by city police officers as the principal cause for his failure. He then filed an action under 42 U.S.C. Sec. 1983 against the City and its officials in their individual and official capacities.[1] He alleged the defendants deprived him of his due process rights by denying him a fair opportunity to obtain an SEU permit. He also alleged that the City instigated police harassment, denying him his fifth and fourteenth amendment rights to operate the night club.
 
 
 2
 The district court dismissed the action against the members of the City's Board of Adjustment and Charles Satanski, the Board's executive secretary, based on the failure to state a claim regardless of questions of immunity because all allegations had been redressed. It subsequently granted summary judgment to all remaining defendants. Melkonian appeals, and we affirm.
 
 
 3
 In October 1985, Charles Melkonian leased a building in Slocum Village Shopping Center located in Havelock, North Carolina, for a proposed nightclub. The building was located in a district designated "H-C Highway Commercial Use of Single and Two-Story Buildings" ("H-C" district). This is the only district in which the Havelock Zoning Ordinance allows the operation of taverns or nightclubs, and generally only after receipt of an SEU permit. Melkonian's application for the SEU permit was reviewed by the Planning Board of Havelock which forwarded it to the Board of Adjustment with a recommendation that the permit be issued. The Board, after a public hearing, voted to deny the application.
 
 
 4
 Melkonian appealed the Board's denial of the SEU permit to the Superior Court of Craven County. On February 7, 1986, the Superior Court remanded the matter to the Board of Adjustment. The Board again denied the application. In the meantime, on December 9, 1985, Melkonian applied for and received a city license to operate an arcade or dancehall, and opened a gameroom called "Bonzo's."
 
 
 5
 On November 15, 1985, Melkonian had applied to the North Carolina Alcoholic Beverage Control ("ABC") Commission for an onpremise malt beverage permit. The City opposed the location of the proposed business, and the ABC Commission denied the license on December 9, 1985. After an administrative appeal, however, the Commission granted Melkonian both on- and off-premise permits on May 5, 1986. However, the city tax collector refused to issue a city beer license and the City sought both judicial review of the Commission's decision and a declaratory judgment holding invalid the Commission's grant. The City failed in all their efforts, however, and Melkonian received his city beer license on July 3, 1986. Melkonian then opened a nightclub at the "Bonzo" location, naming it the "Tradewinds."[2] Melkonian alleges, however, that the business was the subject of unjustified City-instigated police surveillance and interference which caused it to cease operation in June 1987.
 
 I. Dismissal and Judgment on the Pleadings
 
 6
 The district court granted defendants' motion for judgment on the pleadings and motion to dismiss as to the individual members of the Board of Adjustment and Defendant Charles Satanski, the director of inspections and executive secretary of the Board. It found that Melkonian had received redress from the Superior Court allowing him to open the club despite the ordinance and efforts of the city government. It also found that he had received the procedural process due at each level of the dispute. It later denied Melkonian's motion to reconsider. In addition to affirming the reasons for the dismissal, it rejected Melkonian's claim of lack of equal protection because of his failure to show that he was a member of a suspect class; his claim of conspiracy because he failed to show the element of agreement; and his claim of a "right to enjoy freedom of enterprise" because the Constitution does not recognize such a right.
 
 
 7
 The district court's principal constitutional holding was that Melkonian had no fourteenth amendment protected property interest in an inchoate SEU permit under North Carolina law. It held:
 
 
 8
 A property right protected by the Fourteenth Amendment consists of an expected benefit to which the claimant must be legitimately entitled. Board of Regents v. Roth, 408 U.S. 564, 578, 92 S.Ct. 2701, 2709 (1972). The law of North Carolina contemplates that property rights may include ungranted Special Exception Use (SEU) permits when an applicant establishes that the facts and conditions of his application give rise to its issuance, at which point its denial must be supported by "competent, material, and substantial evidence." Humble Oil & Refining Co. v. Board of Aldermen, 284 N.C. 458, 468 (1974).
 
 
 9
 The "Order Denying a Special Use Permit" issued by the Board of Adjustment on March 20, 1986, which was prepared in response to a court order directing the Board to issue the reasons for its denial of plaintiff's application, lists as its reasons a variance between the application and the proposed use of the tavern, an unsafe environment for individuals under the legal drinking age, and a number of problems concerning parking for the nightclub and access to it. Unlike the application before the court in Humble Oil & Refining, these findings do not constitute prohibited "conclusions unsupported by factual data or background, [which] are incompetent and insufficient to support the Aldermen's findings." 284 N.C. at 469. As reflected by the original order, the court finds that plaintiff did not provide the county authorities with a level of evidence establishing a property right in the SEU permit. The record of the county proceedings shows that the decision to deny the permit was not based on unsupported evidence. We agree. United Land Corp. of America v. Clarke, 613 F.2d 497, 501 (4th Cir.1980); Humble Oil & Refining Co. v. Board of Aldermen, 202 S.E.2d 129, 136 (N.C.1974); Charlotte Yacht Club, Inc. v. County of Mecklenburg, 307 S.E.2d 595, 597 (N.C.App.1983). We further agree that Melkonian was not deprived of due process. He received procedural due process at every level and, even though he did not receive an SEU permit, he obtained authorization to operate the club.
 
 II. Summary Judgment
 
 10
 In granting defendants' motion to dismiss the individual members of the Board of Adjustment and Satanski, the court declined to dismiss the Sec. 1983 claim against the remaining defendants as regards actions allegedly taken to close Melkonian's nightclub. In later granting summary judgment to them, the court found that the presence of officers in and around the bar was consistent with the policy of the police department and was not directed at Melkonian's business; that the disparity in enforcement did not rise to a constitutional violation; that the level of surveillance did not amount to harassment; and that Melkonian failed to show the activity to have been ordered by the defendants.
 
 
 11
 First, we agree with the City that Melkonian's police harassment claim is not one properly implicating the fifth or fourteenth amendment. Even considering it as a Sec. 1983 action alleging a fourth amendment violation fails to save Melkonian's appeal. The surveillance was not alleged to be, nor in our view did it, comprise circumstances amounting to an unreasonable search and seizure. See Turner v. Dammon, 848 F.2d 440 (4th Cir.1988). Moreover, regardless of the constitutional standards employed, we are persuaded that Melkonian's evidence simply failed to establish a genuine issue of material fact concerning whether his employees and customers were subjected to a systematic scheme of harassment and intimidation.
 
 
 12
 The testimony of Melkonian and his wife indicates only that officers stayed near the club, walked through periodically, stopped some customers as they left "as if they were driving while impaired" and told Melkonian on occasion that the City received complaints of noise. Statements presented by Melkonian's affiants, including two ex-police officers, indicate only that they observed police in and around Tradewinds and that their presence made customers nervous. Moreover, the affidavits of two former police officers related to events occurring before the nightclub opened. On the other hand, in the police affidavits presented by the defendants, the officers denied that they were directed to give special attention to Tradewinds. The police chief testified by deposition that he instructed police officers to patrol every bar in the City and to get out of the patrol car and walk through the businesses as often as possible. He also said that he did not direct that this activity occur more frequently at Tradewinds than similar establishments.
 
 
 13
 Likewise, we find no error in the district court's dismissal of the conspiracy claim. In view of the above, the judgment of the district court is affirmed.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 Named in the complaint are the Mayor, members of the Board of Commissioners, members of the Board of Adjustment, the city manager, the public safety director, the director of inspections and executive director of both the Planning Board and the Board of Adjustment
 
 
 [2]
 The district court noted that although Melkonian never received the SEU permit that he originally sought, the result of being given access to the ABC Commission to appeal the decision of the county authorities and the redress he received in the state courts was the acquisition of the proper authorization to open the nightclub